# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MINNESOTA

---

COREY BAILEY and KAI STEENHOEK, individually, and on behalf of all others similarly situated,

      Plaintiffs,

v.

BORDER FOODS, INC. and SKY VENTURES, LLC d/b/a PIZZA HUT, INC.,

      Defendants.

File No. 09-CV-1230 (RHK/AJB)

---

## DEFENDANTS' *CORRECTED* MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

## TABLE OF CONTENTS

Page No.

TABLE OF AUTHORITIES............................................................................................iii

INTRODUCTION .......................................................................................................... 1

PLAINTIFFS' ALLEGATIONS.................................................................................... 2

    I.     FACTUAL ALLEGATIONS...................................................................... 2

    II.    LEGAL CLAIMS IN THE COMPLAINT ................................................ 4

ARGUMENT.................................................................................................................. 5

    I.     APPLICABLE PLEADING STANDARDS................................................ 5

    II.    COUNTS ONE THROUGH THREE FAIL TO ALLEGE
          KNOWLEDGE ......................................................................................... 6

            A.    The Employer's Knowledge Is An Essential Element Under
                  The FLSA And MFLSA..................................................................... 7

            B.    Employer Knowledge Is Necessary To Avoid A Result That
                  Is Inconsistent With The Purposes Of The FLSA............................ 10

            C.    The Requirement Of Employer Knowledge Is Also Reflected
                  In The Regulatory Scheme.............................................................. 12

            D.    Common Sense Also Dictates That Knowledge Is An
                  Essential Element. ........................................................................... 14

    III.   COUNT THREE FAILS TO STATE A CLAIM UNDER THE
          STATUTE ................................................................................................ 15

    IV.   PLAINTIFFS FAIL TO PLEAD THE AMOUNT OF UNPAID
          WAGES DUE........................................................................................... 16

    V.    PLAINTIFFS' CLAIM OF UNLAWFUL RETENTION OF
          GRATUITIES IS PREEMPTED BY FEDERAL LAW............................. 17

            A.    Conflict Preemption. ....................................................................... 18

            B.    Conflict Preemption Analysis Applied. .......................................... 20

C.    The FLSA's Limited Exception To Preemption Does Not Apply Here. ....................................................................... 24

CONCLUSION .............................................................................................. 25

# TABLE OF AUTHORITIES

Page No.

**Cases:**

*Anderson v. Sara Lee Corp.*,
    508 F.3d 181 (4th Cir. 2007) ................................................................. 18

*Ashcroft v. Iqbal*,
    ___ U.S. ___, 129 S. Ct. 1937 (2009) ..................................................... 5

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................. 5

*Cipollone v. Liggett Group, Inc.*,
    505 U.S. 504 (1992) ................................................................................. 6

*Davis v. Food Lion*,
    792 F.2d 1274 (4th Cir. 1986) ........................................... 7, 8, 9, 12 n.9

*Donovan v. Williams Chem. Co., Inc.*,
    682 F.2d 185 (8th Cir. 1982) ..................................................... 7, 12 n.9

*Forest Park II v. Hadley*,
    336 F.3d 724 (8th Cir. 2003) ....................... 19, 21, 23, 23 n.16, 24 n.17

*Forrester v. Roth's I.G.A. Foodliner, Inc.*,
    475 F. Supp. 630 (D. Or. 1979) ........................................................... 11

*Gade v. Nat'l Solid Waste Mgmt. Ass'n*,
    505 U.S. 88 (1992) ............................................................................... 24

*Hertz v. Woodbury County, Iowa*,
    566 F.3d 775 (8th Cir. 2009) ............................................. 5, 7, 8, 12 n.9

*Hultgren v. County of Lancaster, Nebraska*,
    913 F.2d 498 (8th Cir. 1990) ......................................................... 23 n.15

*Jewell Ridge Coal Corp. v. Local No. 6167, United Mine Workers of Am.*,
    325 U.S. 161 (1945) ............................................................................. 21

*Jones v. Casey's Gen. Stores*,
    538 F. Supp. 2d 1094 (S.D. Iowa 2008) .............................................. 17

*Luiken et al. v. Domino's Pizza, LLC*,
    No. 09-cv-516 (D. Minn. 2009) ........................................................................ 10 n.8

*Martin v. Aubuchon*,
    623 F.2d 1282 (8th Cir. 1980) ................................................................................ 6

*Mensing v. Wyeth, Inc.*,
    562 F. Supp. 2d 1056 (D. Minn. 2008) ........................................................... 18, 19

*Mumbower v. Callicott*,
    526 F.2d 1183 (8th Cir. 1975) ................................................................. 7, 8, 12 n.9

*Pet Quarters, Inc. v. Depository Trust & Clearing Corp.*,
    559 F.3d 772 (8th Cir. 2009) ................................................................................ 21

*Reich v. Stewart*,
    121 F.3d 400 (8th Cir. 1997) ................................................................... 7, 8, 12 n.9

*United Steelworkers of Am. v. Johnson*,
    799 F.2d 402 (8th Cir. 1986) ................................................................................ 21

*Villegas v. J.P. Morgan Chase & Co.*,
    No. C. 09-00261 SBA, 2009 WL 605833
    (N.D. Cal. Mar. 9, 2009) ..................................................................................... 16

*Wirtz v. Harrigill*,
    214 F. Supp. 813 (S.D. Miss. 1963) ..................................................................... 11

*Wyeth v. Levine*,
    ___. U.S. ___, 129 S. Ct. 1187 (2009) ..................................................... 18, 23 n.15

*Zhong v. August August Corp.*,
    498 F. Supp. 2d 625 (S.D.N.Y. 2007) ............................................................... 5, 16

**Constitutions:**

U.S. Const. art. VI, cl. 2 ............................................................................................ 18

**Rules and Statutes:**

Fed. R. Civ. P. 8(a)(2) ............................................................................................... 9
Fed. R. Civ. P. 9(b) ............................................................................................. 12 n.9

Fed. R. Civ. P. 12(b)(6) ......................................................................... 6

Minn R. 5200.0080, subp. 4 .................................................................. 20
Minn R. 5200.0080, subp. 4(a) ....................................................... 23 n.16
Minn R. 5200.0090 .................................................. 6 n.7, 13, 13 n.12
Minn R. 5200.0090, subp. 1 ................................................ 13, 13 n.12

29 U.S.C. § 203(g) ................................................................... 9, 10
29 U.S.C. § 206 ........................................................... 9, 10, 10 n.8
29 U.S.C. § 206(a) ......................................................................... 9
29 U.S.C. § 207 ........................................................... 9, 10, 10 n.8
29 U.S.C. § 218(a) ....................................................................... 24

29 C.F.R. § 531.35 ......................................................................... 6
29 C.F.R. § 531.52 ................................................................... 20, 21
29 C.F.R. § 531.55(a) ........................................................... 20, 21, 22
29 C.F.R. § 778.217(b)(3) ................ 10, 13, 13 n.11, 14 n.12, 17 n.13
29 C.F.R. § 778.217(c) ............................................. 6 n.6, 13, 13 n.10
29 C.F.R. § 785.11 ................................................................ 7, 12 n.9

Minn. Stat. § 177.23, subd. 4 .............................................................. 25
Minn. Stat. § 177.23, subd. 5 ............................................................... 8
Minn. Stat. § 177.23, subd. 9 ................................................... 20, 23 n.16
Minn. Stat. § 177.24, subd. 1(b) ........................................................... 6
Minn. Stat. § 177.24, subd. 2 ................................................... 20 n.14, 25
Minn. Stat. § 177.24, subd. 3 ....................................................... 17, 20
Minn. Stat. § 177.24, subd. 4 .................................................... 6 n.7, 15
Minn. Stat. § 177.24, subd. 4(1)-(4) ..................................................... 15
Minn. Stat. § 177.24, subd. 4(2) .......................................................... 15

FLSA Op. Letter No. 2005-31 (Sept. 2, 2005), 2005 WL 3308602 ............................ 21, 22
FLSA Op. Letter (July 12, 1999), 1999 WL 1788134 ..................................... 21
FLSA Op. Letter (Aug. 29, 1997), 1997 WL 971257 ..................................... 22
FLSA Op. Letter No. 379 (Mar. 26, 1976), 1976 WL 41731 ........................... 21
FLSA Op. Letter (Feb. 18, 1975), 1975 WL 40934 ........................................ 21
Wage Payments Under the Fair Labor Standards Act of 1938,
     32 Fed. Reg. 13575, 13580 (Sept. 28, 1967)
     (codified at 29 C.F.R. §§ 531.52, 531.55) ............................................. 21

**Other:**

James T. O'Reilly,
  *Federal Preemption of State and Local Law, Legislation,*
  *Regulation and Litigation* 72 (2006) ...................................................................... 19

Defendants Border Foods, Inc. and Sky Ventures, LLC respectfully submit this *Corrected*[1] Memorandum of Law in Support of Motion to Dismiss Plaintiffs' Second Amended Complaint ("SAC").[2]

## INTRODUCTION

In this putative collective and class action, Plaintiffs claim that Defendants may have, on occasion, failed to fully reimburse them for expenses they incurred delivering Defendants' pizzas.  As a result, Plaintiffs contend their pay may have fallen below the wage minimums mandated by the federal Fair Labor Standards Act ("FLSA") and Minnesota Fair Labor Standards Act ("MFLSA").  Plaintiffs also claim that these possible under-reimbursements constitute improper deductions from wages under the MFLSA.  Finally, Plaintiffs contend that under Minnesota law, Defendants' delivery charge should have been paid over to Plaintiffs as a gratuity—even though federal law expressly dictates that a mandatory service charge may *never* be treated as a gratuity. Plaintiffs do not, however, assert that Defendants knew their expenses exceeded the reimbursements they received, or that they ever provided Defendants with receipts for

---

[1]   Defendants' initial Memorandum of Law, timely filed and served via CM/ECF on August 17, 2009, erroneously cited *Siavichay v. 141 Restaurant Inc.*, No. CV-07-3082, 2007 WL 4770435 (E.D.N.Y. September 24, 2007) as an unreported decision of the court.  The document, which was also attached as Exhibit 1 to the Affidavit of William A. McNab, did not represent the decision of the court and all references to it have been removed from Defendants' Corrected Memorandum of Law in Support of Motion to Dismiss.  Defendants regret any inconvenience to the Court or counsel.

[2]   It is Defendants' position that Sky Ventures, LLC is the "employer" for purposes of all allegations in the SAC, and that Border Foods, Inc. is not a proper party to the litigation.  By joining in this Motion, Border Foods, Inc. does not concede that it is properly named in this action and expressly reserves all arguments relative thereto.

out-of-pocket expenses.    Nonetheless, after failing to provide this information to Defendants (assuming, *arguendo*, that it ever existed), Plaintiffs evidently believe that they are entitled to twice that amount, plus attorneys' fees.[3]

While novel and imaginative, Plaintiffs' SAC ultimately fails to state a claim upon which relief may be granted.    Counts One through Three lack sufficient factual allegations to make a plausible showing of entitlement to relief.    Count Three also fails to state a cognizable claim in light of the plain language of the MFLSA.    The entire Complaint also fails due to the complete absence of factual allegations from which Plaintiffs' unpaid wages can be inferred or calculated.    Finally, Count Four fails because, as interpreted by Plaintiffs, the Minnesota gratuity statute conflicts with and frustrates the purpose of the FLSA and the regulatory scheme established by the U.S. Department of Labor ("DOL").    Accordingly, the Minnesota gratuity statute, as read by Plaintiffs, is preempted by federal law.    For all of these reasons, Plaintiffs' Complaint must be dismissed.

## PLAINTIFFS' ALLEGATIONS

## I.    FACTUAL ALLEGATIONS

Plaintiffs allege that Defendants own and operate restaurants in Minnesota and other states.  (SAC ¶¶ 8-9.)  Plaintiffs Bailey and Steenhoek are residents of Minnesota. (*Id.* ¶¶ 10-11).  Plaintiffs further allege that they have been employed by Defendants as delivery drivers at various times during the past three years.  (*Id.* ¶¶ 10-11, 17.)  Plaintiffs

---

[3]    Plaintiffs do not offer any factual allegations describing the hours for which they were allegedly not fully compensated, or the amount they are owed, or from which their alleged damages could possibly be inferred or calculated.

purport to represent a putative class of similarly situated collective action plaintiffs under the FLSA and class action plaintiffs under the MFLSA.  (*Id.* ¶¶ 5-6, 32-48.)

As delivery drivers, Plaintiffs received "a set dollar amount for each of their delivery stops, in addition to their regular hourly wages."  (*Id.* ¶ 18; *and see* Am. Compl. Ex. A (hereafter, "Consent Forms").)[4]  Plaintiffs were required to "pay for their own gas, automobile expenses, and other travel-related expenses when they deliver[ed] pizzas." (SAC ¶ 1.)  Plaintiffs allege that the reimbursements they received from Defendants were "insufficient to reimburse them for actual expenses incurred delivering Defendants' pizzas," thus potentially reducing their wage below the statutory minimum.  (*Id.* ¶¶ 19, 21; Consent Forms ¶¶ 2-4.)  Defendants impose a mandatory delivery charge for each pizza delivery, which Defendants retain.  (SAC ¶¶ 22-23.)

Notably missing from Plaintiffs' Complaint are any allegations that Defendants failed to account for all the hours Plaintiffs worked, or to provide Plaintiffs with paychecks that applied the prescribed minimum hourly wage to each hour of work performed.[5]  Also missing are any allegations that Defendants knew or reasonably should have known that Plaintiffs' expenses ever exceeded the reimbursements they were

---

[4]  Plaintiffs' Second Amended Complaint, which was filed by stipulation, did not include copies of the Consent Forms that were previously filed as Exhibit A to Plaintiffs' Amended Complaint.  (Doc. No. 2.)  Accordingly, citations herein to the Consent Forms specifically refer to the May 13, 2009 Consent Form of Corey Bailey, and the May 3, 2009 Consent Form of Kai Steenhoek, attached as Exhibit A to Plaintiffs' Amended Complaint.

[5]  Plaintiffs admit that they received their "hourly pay" plus reimbursements for expenses.  (Consent Forms ¶ 3.)

provided, or that Plaintiffs ever informed Defendants that any reimbursement payment was insufficient to cover his expenses.  Nor do Plaintiffs claim that they ever refused to accept Defendants' reimbursements.  Indeed, there are no allegations whatsoever concerning the amounts of Plaintiffs' expenses or whether they always, occasionally, or only rarely exceeded the reimbursements, or by what amount.  Instead, Plaintiffs merely state that they "do not believe" the reimbursements they received were always enough to cover their expenses.  (Consent Forms ¶ 5.)  Plaintiffs also fail to mention whether the reimbursements they were provided ever exceeded their expenses.

## II.    LEGAL CLAIMS IN THE COMPLAINT

From these barebones fact allegations, Plaintiffs level four legal claims.  In Count One, Plaintiffs seek relief for themselves and a putative nationwide collective action class under the minimum wage provisions of the FLSA, asserting  that their "net" wage fell below the federal minimum wage.  (SAC ¶¶ 49-60.)  In Counts Two through Four, Plaintiffs purport to act on behalf of a putative Rule 23 class, seeking relief for alleged violations of Minnesota law.  (*Id*. ¶¶ 61-90.)  Like Count One, Count Two alleges that as a result of unreimbursed expenses, Plaintiffs' wages fell below the minimum wage required by the MFLSA.  (*Id*. ¶¶ 61-68.)  In Count Three, Plaintiffs contend that the alleged under-reimbursements constituted improper deductions from wages, in excess of $50, also in violation of the MFLSA.  (*Id*. ¶¶ 69-78.)  Finally, Count Four alleges that Defendants improperly retained the "delivery charge" imposed on delivery customers in violation of Minnesota's gratuity statute.  (*Id.* ¶¶ 22-23, 79-90.)

**ARGUMENT**

## I.   APPLICABLE PLEADING STANDARDS

On a motion to dismiss, the court accepts well-pleaded facts as true, and affords them every reasonable inference. *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009). The court need not, however, accept the plaintiff's legal conclusions. *See id.* Further, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Mere "labels or conclusions," or "a formulaic recitation of the elements" are not enough. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). Therefore, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (*quoting Twombly*, 550 U.S. at 555). Factual allegations that are merely consistent with liability fall short of this plausibility requirement. *Iqbal*, 129 S. Ct. at 1949. A complaint that fails to allege *any* facts in support of an essential element of a claim necessarily fails to show a plausible entitlement to relief.

As discussed below, an employer's actual or constructive knowledge of uncompensated work is an essential element of a claim under the FLSA (and by extension, the MFLSA). *See Hertz v. Woodbury County, Iowa*, 566 F.3d 775, 781 (8th Cir. 2009). Additionally, a plaintiff alleging FLSA violations must present facts from which the alleged unpaid wages may be calculated or inferred. *Zhong v. August August Corp.*, 498 F. Supp. 2d 625, 628 (S.D.N.Y. 2007). Because Plaintiffs fail to present sufficient factual allegations to support these essential elements, the Complaint must be dismissed. *Iqbal*, 129 S. Ct. at 1949. Finally, a complaint must present a claim upon

which relief may be granted, Fed. R. Civ. P. 12(b)(6) and *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980), and relief cannot be granted on the basis of a state law claim that is preempted by federal law. *See Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992) (holding that state laws that conflict with federal law are "without effect").

## II.   COUNTS ONE THROUGH THREE FAIL TO ALLEGE KNOWLEDGE

Under the regulations, employees generally must receive the statutory minimum wage "free and clear"—that is, not subject to any deductions for amounts due to the employer or others for expenses incurred primarily for the benefit of the employer.[6]  29 C.F.R. § 531.35.  Minnesota law similarly establishes a minimum hourly wage and limits the "deductions" that an employer may take from an employee's wages.[7]  Minn. Stat. § 177.24, subd. 1(b) and 4.  Counts One and Two allege that under-reimbursement of Plaintiffs' expenses may have caused their "net" wages to fall below the federal and state minimums.  (SAC §§ 49-68 and Consent Forms ¶ 4.)  Count Three alleges that the under-reimbursements constitute improper deductions in excess of $50, in violation of the MFLSA.  (SAC §§ 69-78.)  These claims are fatally flawed because Plaintiffs have failed

---

[6]   Notably, however, federal regulations expressly permit employers to reimburse employees the "reasonably approximate amount expended by the employee." 29 C.F.R. § 217(c).  29 C.F.R. § 778.217(c).

[7]   Minnesota law differentiates between direct and indirect deductions.  Minn. Stat. § 177.24, subd. 4.  Direct deductions are amounts withheld from the employee's wages for items provided by the employer—for example, uniforms.  *Id.*  Indirect deductions, in contrast, are amounts "received by an employer by methods other than payroll deductions"—for example, office supplies purchased by an employee for use by the business, if the purchase is not reimbursed by the employer.  Minn. R. 5200.0090, subp. 2.  Of course, expenses that are reimbursed—whether direct or indirect—are not deductions.  Minn. Stat. § 177.24, subd. 4.

to plead an essential element—that Defendants knew or should have known that Plaintiffs worked hours for which they received less than the minimum wage because their expenses exceeded their reimbursements.

### A.   The Employer's Knowledge Is An Essential Element Under The FLSA And MFLSA.

Plaintiffs cannot proceed on Counts One through Three as set forth in the SAC because Plaintiffs fail to allege that Defendants knew or had reason to know that Plaintiffs performed services for which they received less than the minimum wage. Based on controlling DOL regulations, the Court of Appeals for the Eighth Circuit and other courts have long held that the employer's knowledge is an essential element of an FLSA claim.  29 C.F.R. § 785.11; *Hertz*, 566 F.3d at 781 (requiring that plaintiffs present evidence that employer "knew or should have known" employee performed work for which he or she was not compensated); *Reich v. Stewart*, 121 F.3d 400, 406-07 (8th Cir. 1997) (holding that "key inquiry" is whether employer knew employee was performing uncompensated work); *Donovan v. Williams Chem. Co., Inc.*, 682 F.2d 185, 188 (8th Cir. 1982) (requiring employer's knowledge within definition of "compensable working time"); *Mumbower v. Callicott*, 526 F.2d 1183, 1188 (8th Cir. 1975) (requiring compensation only where the "employer knows or has reason to believe the employee is continuing to work") (internal quotations omitted); *and see Davis v. Food Lion*, 792 F.2d 1274, 1276 (4th Cir. 1986) (affirming judgment for employer where employee failed to prove employer's knowledge "as an element of his case"); *see also* Minn. Stat. § 177.23,

subd. 5 (defining "employ" as "to permit to work," paralleling the FLSA's "suffer or permit" language).

While these cases have often arisen in the context of unreported overtime, for the reasons that follow, the same rationale applies equally in this case.  For example, in *Hertz*, a group of law enforcement professionals sued their employer, the County, under the FLSA for failure to compensate them for unreported work allegedly performed during their commute to and from work and during mealtimes.  566 F.3d at 777-78.  After a jury found for the County, in part because there was no evidence that the County knew or should have known the officers performed the unreported work, the officers appealed. *See id.* at 777.  In affirming, the Court of Appeals for the Eighth Circuit reiterated that, "[a]n employee must be compensated for duties 'before and after scheduled hours . . . if the employer knows or has reason to believe the employee is continuing to work and the duties are an integral and indispensible part of the employee's principal work activity.'" *Id.* at 781 (*quoting Mumbower*, 526 F.2d at 1188).  "Plaintiffs were required to present evidence that they worked above their scheduled hours without compensation and that the County knew or should have known that they were working overtime." *Id.* at 781 (*citing Reich*, 121 F.3d at 407).  In other words, an employer's knowledge that an employee has performed work for which he has not been properly compensated is an essential element of the claim.

Similarly, in *Food Lion*, the Court of Appeals for the Fourth Circuit affirmed a judgment for the defendant employer where the plaintiff failed to show that the defendant knew or should have known of the unpaid overtime hours.  *See Food Lion*, 792 F.2d at

1274.   The court expressly held that actual or constructive knowledge is an essential element of an FLSA claim.  *Id.* at 1276.  As an essential element, it must be alleged with sufficient facts to make a plausible showing of Plaintiffs' entitlement to relief.  Fed. R. Civ. P. 8(a)(2); *Iqbal*, 129 S. Ct. at 1949.

While this case involves unreported and allegedly uncompensated expenses as a deduction from the minimum wage under section 206 of the FLSA, rather than unreported and uncompensated overtime under section 207, that is a distinction without a difference.  The statutory language and existing case law lead to the same result in either case.  The knowledge requirement follows from the definitions in section 203 of the FLSA, which apply equally to the minimum wage provisions of section 206 and the overtime provisions of section 207.  29 U.S.C. §§ 203(g), 206 and 207.  Section 203 of the Act defines "employ" to include "suffer or permit to work."  *Id*.  This has "consistently been interpreted to mean *with the knowledge of the employer*."  *See Food Lion*, 792 F.2d at 1274 (emphasis added) (string cite omitted).

The same is true with respect to the FLSA's minimum wage provisions.  Just as section 207 requires employers to pay time-and-a-half for time worked beyond forty hours per week (provided the employer knew or should have know the employee worked those hours), section 206 requires employers to pay a specified minimum hourly wage for each employee who is "employed in an enterprise" (*i.e.*, "suffered or permitted" to work).  29 U.S.C. §§ 206(a) and 203(g).  Therefore, to prevail on a minimum wage claim, the employee must prove that the employer suffered or permitted him to work, which is to say, knew he provided services and received less than the required minimum because his

- 9 -

"net" wage was reduced by improper expense reimbursements.   29 U.S.C. §§ 206 and 203(g); 29 C.F.R. § 778.217(b)(3).

Here, there are no allegations that Defendants failed to pay Plaintiffs their hourly minimum wage in the first instance.  (Consent Forms ¶ 3.)  Instead, Plaintiffs allege that Defendants may have failed to fully reimburse them for expenses *that Plaintiffs had, until filing this suit, never disclosed to Defendants*.  This is entirely analogous to the unreported overtime cases.[8]  By failing to allege that Defendants knew or reasonably should have known that their wages were reduced by expenses that exceeded reimbursements, Plaintiffs omit essential factual allegations from the pleading.  Accordingly, Counts One through Three must be dismissed.

### B.   Employer Knowledge Is Necessary To Avoid A Result That Is Inconsistent With The Purposes Of The FLSA.

The knowledge requirement follows not only from the plain language of sections 203(g), 206, and 207 of the Act, but from the very purpose of the FLSA.  "Th[e] Fair Labor Standards Act is designed and intended as a shield to protect the unwary and not as a sword on which to impale an unsuspecting employer who is engaged in a

---

[8]   Plaintiffs will likely direct the Court to Judge Donavan W. Frank's August 3, 2009 Memorandum Opinion and Order in *Luiken et al. v. Domino's Pizza, LLC*, No. 09-cv-516 (D. Minn. 2009).  Considering a similar argument, Judge Frank declared "those cases related to overtime, which is an entirely different situation than here."  (Mem. Op. and Order at 7.)  However, Judge Frank's Order fails to say why that would be the case. Defendants respectfully disagree that the law treats section 206 differently than section 207.  Nothing in the Act, the regulations, the case law, or even Judge Frank's Order, presents a principled reason to apply the knowledge requirement only in the overtime context.  To the contrary, the same rationale applies equally to both sections of the FLSA.

business and honestly exercises a reasonable effort in good faith to comply with all the required provisions of such act." *Wirtz v. Harrigill*, 214 F. Supp. 813, 815 (S.D. Miss. 1963). Under Plaintiffs' theory, employees would be incentivized to conceal their expenses and then profit from their silence by recovering those expenses, plus liquidated damages, and attorneys' fees. This absurd result would contradict the purpose and the plain language, of the FLSA.

Nor is this a circumstance where employees are asked to "waive" their statutory right to receive the minimum wage. It is well-settled that employees may not bargain away or waive their rights under the FLSA. *See Forrester v. Roth's I.G.A. Foodliner, Inc.*, 475 F. Supp. 630, 634 (D. Or. 1979). There, the court commented:

> [T]he Act disallows agreements between employers and employees to pay and accept less than standard wages so that employees are not pressured by economic necessity to accept such arrangements, which would defeat the Act's purposes. No similar rationale protects employees who deliberately under-report their overtime hours. Had Forrester accurately reported his working hours in the first place, the store could have complied with the Act by paying overtime or by hiring additional employees to perform the work if it were dissatisfied with the overtime thus resulting. As it was, Forrester himself prevented the store from complying with the Act by failing to report his overtime hours accurately.

*Id*. Likewise here, Defendants do not assert that Plaintiffs have "waived" their rights or agreed to accept less than the minimum wage. Rather, just like the plaintiffs in the dozens of overtime cases who failed to report the work and, therefore, could not plead or prove that the employer knew about the unreported and uncompensated overtime,

Plaintiffs' claims here fail due to the same fundamental pleading defect.  Plaintiffs fail to allege, much less present facts in support of, this essential element of their claim.[9]

### C. The Requirement Of Employer Knowledge Is Also Reflected In The Regulatory Scheme.

The fact that employer knowledge is a necessary element of Plaintiffs' FLSA and MFLSA claims is further evidenced by the reimbursement-related regulations that have been enacted under the FLSA and MFLSA.  Both federal and state regulations permit an employer to pay an agreed upon amount (such as a *per diem*) as reimbursement for certain expenses.  Under federal regulations, the employer may pay "[t]he actual *or*

---

[9]   Here again, Plaintiffs will likely turn to Judge Frank's August 3, 2009 Order, which referred to the knowledge element as a "heightened pleading requirement[]." (Mem. Op. and Order at 7.)  Judge Frank concluded that, "to employ such a pleading requirement would, in effect, create a waiver of some kind where, by failing to affirmatively notify the employer, the employee could waive their right to minimum wage." *Id.*  Defendants respectfully disagree, for two reasons.

First, the phrase "heightened pleading requirement" commonly refers to Rule 9(b)'s command that the circumstances constituting fraud or mistake be alleged with greater specificity.  Fed. R. Civ. P. 9(b).  However, Rule 9 also states that "knowledge[] and other conditions of a person's mind may be alleged generally." *Id.*  But that is not to say that they need not be pleaded at all.  In this circumstance, knowledge is not a "heightened pleading requirement," it is a necessary element of the cause of action, and as such, it must be pleaded and proven.  *See Hertz*, 566 F.3d at 781; *Reich*, 121 F.3d at 406-07; *Donovan*, 682 F.2d at 188; *Mumbower*, 526 F.2d at 1188; *Food Lion*, 792 F.2d at 1276.

Second, Judge Frank's concern that requiring plaintiffs to allege and prove the employer's knowledge would be tantamount to permitting employees to waive FLSA rights is also misplaced.  Indeed, the regulations require employer knowledge and courts have insisted it be pleaded and proven for decades without concern about a possible waiver.  29 C.F.R. § 785.11; *Mumbower*, 526 F.2d at 1188.  Requiring that employers know that employees performed services for which they received less than the statutory minimum wage because their expenses were not properly reimbursed is no different than requiring that they be informed about employees' unreported—and therefore uncompensated—overtime.

*reasonably approximate amount* expended by an employee."[10]  29 C.F.R. § 778.217(b)(3)
(emphasis added).  Under the Minnesota Rules, payment of an "agreed upon allowance"
constitutes sufficient reimbursement unless the employee presents "receipted out-of-
pocket expenses" greater than the allowance.  Minn. R. 5200.0090, subp. 1.

Both the federal and state regulatory schemes allow employers to reimburse the
"actual" amount of employee expenses where it is possible to do so.  But that necessarily
requires the employer's knowledge of those expenses.  Indeed, under the applicable
Minnesota Rule, the employee's actual expenses must be evidenced by receipts.  *See id*.
Alternatively, an agreed-upon amount, or, in the case of federal law, a reasonably
approximate amount, is expressly permitted.[11]   *See id.*; 29 C.F.R. § 778.217(b)(3).
Notably, Plaintiffs do not allege in their Complaint that the reimbursements that they
received (and accepted) were not "agreed upon" or a reasonable approximation of their
expenses.[12]  Nor have they alleged that those reimbursements were less than "receipted
out-of-pocket expenses."

---

[10]   Notably, if a reimbursement exceeds the reasonably approximate cost the employee
actually incurred, the excess amount constitutes wages.  29 C.F.R. § 778.217(c).

[11]   Plaintiffs read the "reasonably approximate" language of 29 C.F.R. § 778.217(b)(3)
completely out of the regulations, implying that it does not apply to minimum wage
earners.  But there is no such limitation in the regulations.  The regulations permit
employers to reimburse either the actual amount or a reasonably approximate amount,
and Plaintiffs do not allege that Defendants failed to reimburse a reasonably approximate
amount.  Plaintiffs' minimum wage claims fail on that basis alone.

[12]   Plaintiffs' admitted ongoing acceptance of the reimbursement reflects their agreement
with the amount remitted.  *See* Minn. R. 5200.0090, subp. 1.  Additionally, Plaintiffs'
continued acceptance of the reimbursement, coupled with their failure to inform
Defendants of any alleged shortfall, reinforce that Defendants could not know that the

The rules and regulations implementing and enforcing the FLSA and MFLSA demonstrate that expenses, like overtime, can only be reimbursed if known to the employer.  Therefore, knowledge is a necessary element of a minimum wage claim based on alleged under-reimbursements.

### D.     Common Sense Also Dictates That Knowledge Is An Essential Element.

Finally, this case demonstrates precisely why an employer's knowledge is a necessary element of a minimum wage claim.  Without information from Plaintiffs, Defendants could not have known that their expenses allegedly exceeded the reimbursements that Defendants provided—and Plaintiffs accepted.  Indeed, even now, Plaintiffs tacitly acknowledge that they do not know whether their expenses were sufficiently reimbursed, stating only that they "do not believe" the reimbursement "was always enough" to cover expenses incurred delivering pizzas.  (Consent Forms ¶ 4.)  If Plaintiffs themselves do not know whether the reimbursements covered their expenses, Defendants certainly could not have known that they were insufficient.  It appears that, for all Plaintiffs know, they may just as well have been over-reimbursed for their expenses.  In any case, Plaintiffs do not allege that the reimbursements they received were less than the "reasonably approximate amount" they expended, which is all that is required under the law.  29 C.F.R. § 778.217(b)(3).  Because Plaintiffs fail to allege this essential element, their wage claims must be dismissed.

---

reimbursements were anything but the "reasonably approximate amount expended" by Plaintiffs.  *See* 29 C.F.R. § 778.217(b)(3).

## III.   COUNT THREE FAILS TO STATE A CLAIM UNDER THE STATUTE

In addition to failing for want of allegations that Defendants knew about any under-reimbursements, Count Three also fails to state a claim under the Minnesota deduction statute.   Plaintiffs allege a violation of Minnesota's $50 limit for certain deductions under Minn. Stat. § 177.24, subd. 4.   (SAC ¶ 75.)   This claim is misplaced because section 177.24 identifies four categories of expenses which, if unreimbursed, constitute deductions: (1) "purchased or rented uniforms"; (2) "purchased or rented equipment"; (3) "consumable supplies"; and (4) "travel expenses."   Minn. Stat. § 177.24, subd. 4(1)-(4).   However, only two of those categories are subject to the $50 deduction limit.   According to the statute, "[d]eductions, direct or indirect, for up to the full cost of the *uniform or equipment* as listed below, may not exceed $50."   Minn. Stat. § 177.24, subd. 4 (emphasis added).   Clearly, "consumable supplies" and "travel expenses" are not uniforms or equipment, and they are not subject to the $50 limitation.

Because Plaintiffs describe their unreimbursed expenses as "travel expenses" (SAC ¶ 76), and travel expenses are not subject to the $50 limit, the claim fails as a matter of law.   And recharacterizing the expense as "purchased or rented equipment" would not save the claim either, because while purchased or rented equipment is subject to the $50 deduction limit, it does not include "a motor vehicle . . . which may be used outside the employment."   Minn. Stat. § 177.24, subd. 4(2).   Therefore, whether "travel expenses" or "purchased or rented equipment," Plaintiffs' vehicle expenses are not subject to the $50 limit.   Accordingly, Count Three fails as a matter of law.

## IV.   PLAINTIFFS FAIL TO PLEAD THE AMOUNT OF UNPAID WAGES DUE

Plaintiffs allege that "[a]s a result of the travel expenses incurred, Plaintiffs, the Nationwide FLSA Collective, and the Minnesota Rule 23 Class were systematically deprived of the minimum wage they were guaranteed under federal and state law." (SAC ¶ 21.)  Beyond that, Plaintiffs make no effort to identify or quantify the expenses that were allegedly incurred, when they were incurred, or the extent to which they exceeded the reimbursements Plaintiffs admittedly received.  This failure is fatal to Plaintiffs' Complaint.

"[W]here a plaintiff alleges violations of the FLSA's minimum and overtime wage provisions, the complaint should, at least approximately, allege the hours worked for which wages were not received."  *Zhong v. August August Corp.*, 498 F. Supp. 2d 625, 628 (S.D.N.Y. 2007).  A complaint sufficiently sets forth a plaintiff's unpaid wages where a simple arithmetical calculation would reveal the substance of the claim.  *See id.*, 498 F. Supp. 2d at 629; *see also Villegas v. J.P. Morgan Chase & Co.*, No. C. 09-00261 SBA, 2009 WL 605833, at **4-5 (N.D. Cal. Mar. 9, 2009) (dismissing FLSA count from plaintiff's complaint because the mere assertion that she did not receive "properly computed wages" did not satisfy the minimal pleading requirements under *Twombly* and the FLSA).

The *Zhong* court held that the complaint failed to state a claim upon which relief could be granted because the plaintiff failed to "provide sufficient information for the Court to be able to calculate the damages claimed."  *Zhong*, 498 F. Supp. 2d at 628. Here, Plaintiffs' Complaint merely makes "conclusory assertions of a right to relief under

the FLSA minimum wage provisions." *Jones v. Casey's Gen. Stores*, 538 F. Supp. 2d 1094, 1102-03 (S.D. Iowa 2008) (quoting *Twombly*, 550 U.S. at 555).  Nothing in the Complaint permits an inference of a right to relief that rises above the speculative level. *Jones*, 538 F. Supp. 2d at 1102-03.  The Complaint fails to provide any information, much less sufficient information, for even a rudimentary determination of Plaintiffs' damages, or a method by which they could even conceivably be calculated.[13]  Because the Complaint does not satisfy the minimal pleading standards under *Twombly* and the FLSA, it must be dismissed for failure to state a claim upon which relief may be granted.

## V.   PLAINTIFFS' CLAIM OF UNLAWFUL RETENTION OF GRATUITIES IS PREEMPTED BY FEDERAL LAW

In Count Four of the Complaint, Plaintiffs allege that Defendants unlawfully retained the delivery charge imposed on delivery customers in Minnesota.  (SAC ¶¶ 22, 23, 83, 84.)  Plaintiffs claim that Defendants' delivery charge is a "gratuity" under Minnesota law, which further provides that "any gratuity received by an employee or deposited in or about a place of business for personal services rendered by an employee is the sole property of the employee."  Minn. Stat. § 177.24, subd. 3.  As an initial matter, Defendants dispute that section 177.24 has any application to Defendants' delivery charge, or that the delivery charge can be properly deemed a gratuity under Minnesota law.  But even if section 177.24 did otherwise apply, under Plaintiffs' reading, the statute

---

[13]   As discussed in Note 11, *infra*, Plaintiffs ignore that an employer is permitted to reimburse the reasonably approximate amount of employees' expenses.   29 C.F.R. § 778.217(b)(3).   In fact, with respect to some vehicle-related expenses, such as depreciation, approximations are inevitable.

conflicts with and frustrates the purpose and methods of a longstanding federal regulatory scheme. As a result, Count Four of the Complaint is preempted and should therefore be dismissed.

Federal law is "the supreme Law of the Land." U.S. Const. art. VI, cl. 2. This is the case with respect to federal regulations as well as federal statutes. *See, e.g., Wyeth v. Levine*, ___. U.S. ___, 129 S. Ct. 1187, 1200 (2009) (holding that "agency regulation with the force of law can pre-empt conflicting state requirements"). State law may be preempted through express preemption (when Congress or the relevant agency expresses an intent to preempt state law on the subject), field preemption (when federal law completely occupies the field, leaving no room for state regulation), or by conflict (when state law conflicts with the purpose *or method* of federal regulation). *See Anderson v. Sara Lee Corp.*, 508 F.3d 181, 191 & n.10 (4th Cir. 2007). Plaintiffs' claim under Count Four is precluded as a result of the latter, conflict preemption.

### A.   Conflict Preemption.

Conflict preemption may arise in either of two ways. It occurs "when compliance with both federal and state regulations is a physical impossibility, *or when state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.*" *Mensing v. Wyeth, Inc.*, 562 F. Supp. 2d 1056, 1058-59 (D. Minn. 2008) (emphasis added). In determining whether a state law poses an obstacle to federal law,

> "it is not enough to say that the ultimate goal of both federal and state law" is the same. *Int'l Paper Co. v. Ouellete*, 479 U.S. 481, 494 (1987). "A state law also is pre-empted if it *interferes with the methods* by which the

federal statute was designed to reach th[at] goal." *Id.* Thus, "[w]here a state statute conflicts with, ***or frustrates***, federal law, the former must give way." *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 663 (1993) (emphasis added) (quotations and brackets as in original).

*Forest Park II v. Hadley*, 336 F.3d 724, 733 (8th Cir. 2003).

In *Forest Park II*, the Court of Appeals for the Eighth Circuit held that Minnesota statutes placing certain notice requirements on owners of subsidized low-income housing that went beyond already established federal notice requirements were preempted by federal law. *See id.* While the state and federal statutes shared the same fundamental purpose, and it was not impossible to comply with both sets of notice requirements, the court nonetheless held that, "the state procedures interfere[d] with the framework created by Congress" by preventing an individual from doing what federal law permitted. *Id.* at 734. Thus, conflict preemption arose because the state law presented an obstacle to the methods by which federal law was regulated, even though it was physically possible to comply with both federal and state law. *See id; and see Mensing*, 562 F. Supp. 2d at 1058-59.

Conflict preemption requires a two-step analysis. First, the Court must consider what the federal and state laws dictate. *See* James T. O'Reilly, *Federal Preemption of State and Local Law, Legislation, Regulation and Litigation* 72 (2006). Then, the Court must ask, "What aspects of the state law will directly conflict with or frustrate the accomplishment of the federal statutory objectives?" *Id.* Here, there is a clear interference with and frustration of the manner by which the federal statutory objectives are enforced. Accordingly, Minnesota law, as interpreted by Plaintiffs, is preempted.

**B.     Conflict Preemption Analysis Applied.**

*Part One:  What do the State and Federal Laws Dictate?*

In certain circumstances, Minnesota law defines a mandatory charges as a "gratuity" that would belong to the employee.  Minn. Stat. §§ 177.23, subd. 9; 177.24, subd. 3.   One of the factors Minnesota law considers is whether the charge might "reasonably be construed" by the customer as a gratuity.  Minn. Stat. § 177.23, subd. 9; Minn. R. 5200.0080, subp. 4.   Thus, the customer's intent is a factor in the analysis. However, under federal law, a mandatory charge imposed by the employer, such as the delivery charge at issue here, is *never* a gratuity because "[w]hether a tip is to be given, and its amount, are matters determined solely by the customer."   29 C.F.R. § 531.52. Compulsory charges that are not within the customer's discretion are, in all cases, "the employer's property . . . and do not constitute tip income to the employee."   29 C.F.R. § 531.55(a).[14]

*Part Two:  Minnesota Law Conflicts With And Frustrates Federal Methods and Objectives.*

Plaintiffs claim that under Minnesota law, Defendants' delivery charge is "the sole property of the employee."  Minn. Stat. § 177.24, subd. 3.   But under federal law, the delivery charge is unquestionably "the employer's property."   29 C.F.R. §§ 531.52 and

---

[14]   While the employer may then choose to pay all or part of a mandatory charge to the employee as part of the employee's wage, it "cannot be counted as a tip received" under the FLSA.   *Id.*   In any case, the employer's ability to use revenue from mandatory charges to pay employee wages cannot be reconciled with Plaintiffs' reading of Minnesota law because if, as Plaintiffs claim, the delivery charge is a gratuity, it absolutely *cannot* be counted towards payment of the minimum wage under Minnesota law.  Minn. Stat. § 177.24, subd. 2.

531.55(a).   Thus, construing Defendants' delivery charge to be a gratuity would be inconsistent with federal regulations and would "interfere[] with the methods by which the federal statute was designed to reach [its] goal." *Forest Park II,* 3362 F.3d at 733. This conflict between state and federal law "pose[s] an obstacle to the accomplishment of congressional objectives" and interferes with a carefully crafted federal regulatory scheme. *Pet Quarters, Inc. v. Depository Trust & Clearing Corp.*, 559 F.3d 772, 780 (8th Cir. 2009); *United Steelworkers of Am. v. Johnson*, 799 F.2d 402, 407 (8th Cir. 1986).

In enacting the FLSA, "Congress intended . . . to achieve a uniform national policy of guaranteeing compensation for all work or employment engaged in by employees covered by the Act." *Jewell Ridge Coal Corp. v. Local No. 6167, United Mine Workers of Am.*, 325 U.S. 161, 167 (1945).   To accomplish that end, the DOL—the federal agency charged with implementing the FLSA—has created a detailed regulatory scheme intended to effectuate the FLSA.

For years the DOL has applied a bright line test to separate compulsory service charges from tips. *See* Wage Payments Under the Fair Labor Standards Act of 1938, 32 Fed. Reg. 13575, 13580 (Sept. 28, 1967) (codified at 29 C.F.R. §§ 531.52, 531.55); FLSA Op. Letter (Feb. 18, 1975), 1975 WL 40934; FLSA Op. Letter No. 379 (Mar. 26, 1976), 1976 WL 41731; FLSA Op. Letter No. 2005-31 (Sept. 2, 2005), 2005 WL 3308602.   Moreover, the DOL has expressly considered—and rejected— Minnesota's approach to this analysis. *See* FLSA Op. Letter (July 12, 1999), 1999 WL 1788134.  There, the DOL concluded:

> It is our position that compulsory charges which are added to members'
> bills are gross receipts to an employer.  Therefore, the employer has
> complete discretion in choosing the manner in which the compulsory
> charge is to be used, which would include using it to pay employees . . . .
> *Whether the member believes the automatic fee is distributed to the servers*
> *does not change our position.*

*Id.* (emphasis added).

The manner in which mandatory service charges are handled is no small matter.
The DOL has explained the importance of this distinction to the federal regulatory
scheme.  First, because mandatory charges "are not tips for purposes of the Act," an
employer who imposes a mandatory charge "must pay the entire minimum wage and
overtime requirement unless enough bona fide tips"—*i.e.*, gratuities "voluntarily paid by
a customer"—"are received to qualify the employee as a tipped employee."  FLSA Op.
Letter No. 2005-31 (Sept. 2, 2005), 2005 WL 3308602.  Second, unlike tips, mandatory
charges that are paid to the employee constitute part of the employee's regular rate,
thereby impacting the baseline against which overtime pay must calculated.

> Where an employer imposes a service charge on each sale, such charges do
> not have the character of tips, which are always purely discretionary with
> the customer.  29 CFR 531.55(a). *** Under such circumstances, it is our
> position that payments to employees from the service charges collected by
> the employer are direct compensation under the direct control of the
> employer and must be included in the regular rate of all recipients for
> overtime purposes.

FLSA Op. Letter (Aug. 29, 1997), 1997 WL 971257.  Third, in some circumstances,
mandatory charges paid to an employee by the employer—unlike a tip given to the
employee by a customer—may also "qualify as a commission under section 7(i)," which,
in turn, affects other FLSA requirements.  *See id.*  Thus, the distinction between

mandatory charges and gratuities is important under the federal regulatory structure.  For

that reason, the DOL long ago established a bright line distinction between mandatory

charges and gratuities.[15]   Applying Minnesota's "belief of the customer" approach

drastically changes the inquiry, and would "interfere[] with the *methods* by which the

federal statute was designed to reach [its] goal."  *Forest Park II*, 336 F.3d at 733

(emphasis added).

As in *Forest Park II*, enforcement of the state's statutes would interfere with an

employer's exercise of a federally granted right—in this case, the right to retain all

mandatory charges.   Thus, the state statute "interferes with the framework created by

Congress."[16]   *Id.* at 734.   But "any state law, however clearly within a State's

---

[15]  As the Supreme Court has recently noted, administrative agencies "have a unique
understanding of the statutes they administer."  *Levine*, 129 S. Ct. at 1201 (citation
omitted).  Therefore, while not controlling, "[t]he rulings, interpretations, and opinions of
the Wage and Hour Division Administrator 'constitute a body of experience and
informed judgment to which courts and litigants may properly resort for guidance.'"
*Hultgren v. County of Lancaster, Nebraska*, 913 F.2d 498, 504 (8th Cir. 1990) (citation
omitted).

[16]  That an employer may retain a mandatory charge by satisfying additional
administrative requirements, *see* Minn. Stat. § 177.23, subd. 9 and Minn. R. 5200.0080,
subp. 4(a) & (b), does not rescue the statute from preemption.   That is the precise
teaching of *Forest Park II*.   There, the state law at issue did not directly conflict with
federal law, but it imposed an additional administrative requirement—notice of
prepayment a full year in advance, rather than 150 to 270 days, as required by federal
law.  *Forest Park II*, 336 F.3d at 733-34.   Although it was possible to comply with both
the state and federal requirement simply by giving notice twice, the Eighth Circuit
determined that the state law was preempted because "the state, by enforcing its own
statutes, is the sole entity standing in the way of an owner's exercise of its federally
granted right to prepay and withdraw from the program."  *Id.*   While "the federal statute
and the state statute may share the same objective," the state statute *interfered with the
method chosen by federal law to achieve that objective.   Id.* at 734 (emphasis added).
The same is true here.

acknowledged power, which interferes with or is contrary to federal law, must yield."

*Gade v. Nat'l Solid Waste Mgmt. Ass'n*, 505 U.S. 88, 108 (1992) (quotations and citations

omitted).   Accordingly, to the extent that mandatory delivery charges imposed by

Defendants fall within the definition of "gratuity" under Minnesota law, Minnesota law is

preempted and Count Four must be dismissed.[17]

### C.   The FLSA's Limited Exception To Preemption Does Not Apply Here.

Section 218 of the FLSA includes a limited exception to preemption, but it does

not save Count Four.   *See* 29 U.S.C. § 218(a).   The exception permits states to enact "a

minimum wage higher than the minimum wage established under this chapter," and "a

---

[17]   Here again, it is anticipated that Plaintiffs will direct the Court to Judge Frank's
August 3, 2009 Order.  Considering this question, Judge Frank concluded that

> construing the delivery charge as a gratuity under Minnesota law does not
> create conflicting obligations under state and federal law.   Under that
> scenario, the employer would not be able to count the delivery charge
> toward the state minimum wage requirement, but would still have to pay
> the employee the mandatory minimum in addition to the delivery charge.
> As such, Plaintiffs' reading of the statute creates a higher state minimum
> wage, for all practical purposes.   But it does not create conflicting
> obligations with the employer's federal rights.   For this reason, the Court
> finds that the state law is not preempted.

Mem. Op. and Order at 12-13.  Defendants respectfully disagree with Judge Frank's
conclusion.   As discussed in Note 16, *supra*, even if there is no direct conflict and
compliance with both state and federal law is possible, where, as here, the state law
interferes with the method of federal regulation, it is preempted.  *See Forest Park II,* 336
F.3d at 733.  To construe the mandatory service charge as a gratuity on the basis of state
law would completely obfuscate the bright line test carefully chosen and implemented by
the DOL.   Moreover, if a state regulation deprives an individual of a statutory or
regulatory right provided for by federal law, it must yield.  *See id*. at 734.  Plaintiffs'
interpretation would deprive employers of the federally granted right to retain mandatory
service charges.   Notably, Judge Frank's Order did not analyze frustration of federal
method, or cite *Forest Park II*, the controlling Eighth Circuit precedent.

maximum workweek lower than the maximum workweek established under this chapter." *Id.* Minnesota law provides that gratuities are wholly distinct from wages and *cannot* be used to pay any part of the minimum wage. *See* Minn. Stat. §§ 177.23, subd. 4, 9; 177.24, subd. 2. The FLSA's exemption from the preemptive effect of the federal regulatory scheme applies only to minimum *wage*s—not gratuities. Thus, to the extent that Defendants' delivery charge would be considered a gratuity under Minnesota law, Minnesota law is preempted.

## **CONCLUSION**

Plaintiffs bring new and creative claims in this putative collective and class action. However, their claims fail, as a matter of law, for several reasons. First, Plaintiffs' federal and state minimum wage and improper deduction claims fail to allege Defendants' knowledge, an essential element of each claim. Second, Plaintiffs' improper deduction claim fails to state a claim within the ambit of the applicable statute. Third, all of Plaintiffs' wage claims fail to present necessary facts from which their allegedly under-compensated hours can be inferred or calculated. Fourth, Plaintiffs' claim under the Minnesota gratuity statute (as Plaintiffs construe that statute) must fail because by Plaintiffs' reading, the Minnesota statute would conflict with and frustrate the federal regulatory scheme.

In the final analysis, Plaintiffs' minimum wage claims fail because they would impose upon Defendants a greater obligation than is required by law. Plaintiffs claim that Defendants have not reimbursed their "actual" automotive expenses. However, the law provides an alternative, permitting employers to reimburse a reasonable

approximation of employee expenses and because Plaintiffs have not alleged that Defendants' failed to do so, Plaintiffs' minimum wage claims must be dismissed.

For the foregoing reasons, Defendants respectfully request that Plaintiffs' Second Amended Complaint be dismissed with prejudice.


Dated: September 9, 2009                    WINTHROP & WEINSTINE, P.A.


                                            s/  William A. McNab
                                               Laura A. Pfeiffer, #0260125
                                               William A. McNab, #320924
                                               Joseph M. Windler, #387758

                                            225 South Sixth Street, Suite 3500
                                            Minneapolis, Minnesota 55402-4629
                                            Tel:  (612) 604-6400
                                            Fax:  (612) 604-6800

                                            **ATTORNEYS FOR DEFENDANTS**

4722779v1