## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

---

COREY BAILEY and KAI STEENHOEK,
individually, and on behalf of all others
similarly situated,

      Plaintiffs,

v.

BORDER FOODS, INC. and SKY
VENTURES, LLC d/b/a PIZZA HUT, INC.,

      Defendants.

File No. 09-CV-1230 (RHK/AJB)

---

## DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

## <u>TABLE OF CONTENTS</u>

<u>Page No.</u>

TABLE OF AUTHORITIES .................................................................................. ii

INTRODUCTION ............................................................................................... 1

ARGUMENT ...................................................................................................... 3

    I.     PLEADING STANDARDS ......................................................................... 3

    II.    EMPLOYERS CANNOT REIMBURSE UNKNOWN EXPENSES ........... 3

         A.    The FLSA And MFLSA Do Not Require Employers To Perform The Impossible. ..................................................... 3

         B.    Plaintiffs Must Allege That Defendants Knew Or Should Have Known Plaintiffs' "Actual Expenses." ...................................... 5

               1.    *Secretary of Labor v. Labbe* is inapposite .............................. 6

               2.    The overtime cases present the best analog in these circumstances. ........................................................................ 7

               3.    Plaintiffs fail to plead an essential element of their claim. ....................................................................................... 9

               4.    Employees should not receive a windfall based on information they did not share with their employer ................ 9

          C.    The Knowledge Requirement Is Implicit In The Regulations. ........ 10

    III.   COUNT THREE ALSO LACKS A STATUTORY BASIS ...................... 11

    IV.   PLAINTIFFS FAIL TO TO ALLEGE SUFFICIENT FACTS TO STATE A PLAUSIBLE CLAIM FOR RELIEF ........................................ 12

    V.    PLAINTIFFS' MINNESOTA GRATUITIES CLAIM INTERPRETS MINNESOTA LAW IN A MANNER THAT WOULD INTERFERE WITH THE FEDERAL REGULATORY SCHEME .................................................................................................. 13

CONCLUSION ................................................................................................. 18

# TABLE OF AUTHORITIES

Page No.

**Cases:**

*Ashcroft v. Iqbal,*
\_\_\_ U.S. \_\_\_, 129 S. Ct. 1937 (2009) ........................................................ 3, 7 n.4, 9

*Barvinchak v. Ind. Reg'l Med. Ctr.,*
2007 WL 2903911 (W.D. Pa. Sept. 28, 2007) ........................................................ 9

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ................................................................................... 7, 7 n.4, 12

*Chan v. Triple 8 Palace, Inc.,*
2006 WL 851749 (S.D.N.Y. Mar. 30, 2006) ........................................................ 17

*Detroit Edison Co. v Comm'r,*
319 U.S. 98 (1943) ........................................................................................ 4

*Forest Park II v. Hadley,*
336 F.3d 724 (8th Cir. 2003) ........................................................................ 14, 18

*Fribourg Navigation Co. v. Comm'r of Internal Revenue,*
383 U.S. 272 (1966) ........................................................................................ 4

*Griffin v. Oceanic Contractors, Inc.,*
458 U.S. 564 (1982) ........................................................................................ 5

*Jones v. Casey's Gen. Stores,*
538 F. Supp. 2d 1094 (S.D. Iowa 2008) ........................................................ 12

*Mensing v Wyeth, Inc.,*
562 F. Supp. 2d 1056 (D. Minn. 2008) ........................................................ 14

*Platek v. Duquesne Club,*
961 F. Supp. 835 (W.D. Pa. 1995) ........................................................ 17

*Prof'l Med. Care Home, Inc. v. Harris,*
644 F.2d 589 (7th Cir. 1980) ........................................................................ 4

*Secretary of Labor v. Labbe,*
319 Fed. App'x 761 (11th Cir. 2008) ........................................................ 6

*United States v. Am. Trucking Ass'n, Inc.*,
    310 U.S. 534 (1940) .......................................................................................... 5

*Wirtz v. Harrigill*,
    214 F. Supp. 813 (S.D. Miss. 1963) .............................................................. 9

*Zhong v. August August Corp.*,
    498 F. Supp. 2d 625 (S.D.N.Y. 2007) ..................................................... 12, 13

## **Rules and Statutes:**

Fed. R. Civ. P. 8(a)(2) ......................................................................................... 3

29 U.S.C. § 203 ................................................................................................... 8

29 C.F.R. § 217(b)(3) ..................................................................................... 4, 10
29 C.F.R. § 531.32(c) .......................................................................................... 11
29 C.F.R. § 531.35 .............................................................................................. 11
29 C.F.R. §§ 531.50-59 ....................................................................................... 17
29 C.F.R. §§ 531.52 ....................................................................................... 13, 16
29 C.F.R. § 531.55 ......................................................................................... 16, 17
29 C.F.R. § 531.55(a) .................................................................................... 13, 16

Minn. R. 5200.0090, subp. 1 ...................................................................... 4, 10, 12

Minn. Stat. § 177.23, subd. 9 .............................................................................. 14
Minn. Stat. § 177.24, subd. 2 .............................................................................. 16
Minn. Stat. § 177.24, subd. 3 .............................................................................. 14
Minn. Stat. § 177.24, subd. 4 .............................................................................. 11
Minn. Stat. § 177.24, subd. 5 .............................................................................. 11

## **Other:**

FLSA Op. Letter (Aug. 29, 1997), 1997 WL 971257 ........................................ 15
FLSA Op. Letter No. 2005-31 (Sept. 2, 2005), 2005 WL 3308602................... 15

Defendants Border Foods, Inc. and Sky Ventures, LLC[1] respectfully submit this Reply Memorandum of Law in Support of Motion to Dismiss Plaintiffs' Second Amended Complaint ("SAC").[2]

## INTRODUCTION

In this novel putative FLSA collective and Rule 23 class action, Plaintiffs allege that their "net" wages may have fallen below the statutory minimum wage because Defendants did not reimburse the "actual expenses" they incurred delivering Defendants' pizzas. (SAC ¶ 19.) Plaintiffs also claim that Defendants made improper deductions in excess of $50 and retained mandatory delivery charges that Plaintiffs would like to construe as gratuities. (SAC ¶¶ 75, 23.)

Plaintiffs' claims should be dismissed. Counts One through Three fail to allege that Defendants knew or even could have known what Plaintiffs' "actual expenses" were, or that any reimbursements were insufficient. Count Three further fails because Plaintiffs' automobile expenses are not subject to the statute upon which the claim depends, and the claim otherwise merely reiterates Count Two. Counts One through Three also fail to present sufficient facts to state a plausible claim under the controlling

---

[1]    Defendants reiterate their position that Sky Ventures, LLC is the "employer" for purposes of all allegations in the SAC, and that Border Foods, Inc. is not a proper party to the litigation. By joining in this Motion, Border Foods, Inc. does not concede that it is properly named in this action and expressly reserves all arguments relative thereto.

[2]    Plaintiffs request that the Court cancel oral argument and rule on the papers. Given the novelty of Plaintiffs' claims, Defendants believe oral argument on this Motion is appropriate.

caselaw.  Count Four fails because the FLSA and applicable federal regulations preempt and preclude Plaintiffs' interpretation of Minnesota law.

In response, Plaintiffs argue that it was not necessary for them to inform Defendants of the expenses they now allege were insufficiently reimbursed (though they do not indicate how Defendants could reimburse "actual expenses" without being told what they were).  Plaintiffs also argue that well-settled and apposite jurisprudence should be ignored, and that the FLSA's definition of "employ" does not apply to its minimum wage provisions.  Finally, Plaintiffs respond to Defendants' preemption argument with red herring arguments and *non sequiturs*.

Plaintiffs simply fail to respond to several of Defendants' arguments, as outlined below.  Most significantly, Plaintiffs fail to address, much less resolve, the fundamental defect in their FLSA and MFLSA reimbursement claims: *an employer simply cannot reimburse an unknown amount*.  Plaintiffs do not dispute that Defendants did not and could not know what their "actual expenses" were.  Plaintiffs do not even allege that *they* know what those amounts were, nor, indeed, can they.  Instead, they say it does not matter.  That is the false premise upon which Plaintiffs' claims are based.  Plaintiffs would hold Defendants "strictly liable" for an unknown, and ultimately unknowable, "actual" amount.

Because Plaintiffs' expenses arose from the use of personally owned vehicles, they necessarily include depreciation, which is, by definition, an *approximation*, and fuel consumption, which varies with driving conditions and other factors.  These and other costs must then be prorated between personal use and use for the employer—though each

may occur under differing conditions.   In other words, Plaintiffs' "actual expenses" simply cannot be determined (much less paid on a weekly basis) in any meaningful way.

That is why the regulations permit employers to reimburse a "reasonably approximate" amount.  In the end, that is all they can do.  But Plaintiffs *do not* allege that Defendants failed to provide a reasonably approximate reimbursement.  (*See generally* SAC.)  Because Plaintiffs demand more than the statutes and rules require, the SAC fails to state a claim upon which relief may be granted.  Accordingly, it must be dismissed.

## ARGUMENT

### I.    PLEADING STANDARDS

When considering Defendants' motion, the Court is not required to accept barebones recitals of selected elements or mere legal conclusions.  *See Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009).  Rather, a complaint must state a claim in a manner showing that the plaintiff is entitled to relief.  Fed. R. Civ. P. 8(a)(2).  Thus, a proper complaint must allege sufficient facts to raise a facially plausible claim.  *Iqbal*, 129 S. Ct. at 1949.

### II.    EMPLOYERS CANNOT REIMBURSE UNKNOWN EXPENSES

#### A.    The FLSA And MFLSA Do Not Require Employers To Perform The Impossible.

According to Plaintiffs, the FLSA, MFLSA and related regulations require employers to divine, on a weekly basis, the "actual expenses" that follow from an employee's use of a personal vehicle for both personal and employment purposes.  However, the "actual expenses" include, among other things, depreciation.   Despite

Plaintiffs' insistence to the contrary, the FLSA and MFLSA cannot require reimbursement of "actual expenses" in this circumstance because these kinds of expenses, by their very nature, can only be approximated. *See, e.g., Fribourg Navigation Co. v. Comm'r of Internal Revenue*, 383 U.S. 272, 277 (1966) ("tax law has long recognized the accounting concept that depreciation is a process of *estimated* allocation") (emphasis added); *Detroit Edison Co. v Comm'r*, 319 U.S. 98, 101 (1943) (stating that depreciation *approximates* the effects of use and time on an asset); *Prof'l Med. Care Home, Inc. v. Harris*, 644 F.2d 589, 593-94 (7th Cir. 1980) (noting that depreciation is an *inexact* science).[3] The very notion of "actual expenses" in this context is nothing but a chimera.

For that reason, the regulations governing reimbursements for travel expenses allow employers to reimburse a "reasonable approximation" (29 C.F.R. § 217(b)(3)), or an "agreed upon allowance" (so long as it is greater than receipted out-of-pocket expenses) (Minn. R. 5200.0090, subp. 1). Ignoring this reality, Plaintiffs insist that employers "shall" pay minimum wages under the FLSA and "must" pay minimum wages under the MFLSA. (Pls.' Br. at 3.) Therefore, they reason, an employer cannot pay an estimated amount for employee-incurred expenses—even a "reasonable approximation," or an "agreed upon amount"—because that might result in a "net" wage below the statutory minimum. (Pls.' Br. at 9-10.) In short, Plaintiffs claim the statutes require the

---

[3] The same is true with respect to fuel economy.

impossible—precise reimbursement of "actual expenses" that in reality can only be approximated.

But statutes and regulations are not to be construed in a manner that leads to an absurd result.  Statutory interpretation is a judicial function, and while interpretation begins with the plain language of the statute, "[w]hen that meaning has led to absurd or futile results . . . [the] Court has looked beyond the words to the purpose of the act." *United States v. Am. Trucking Ass'n, Inc.*, 310 U.S. 534, 543-44 (1940).  Indeed, "interpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available." *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982).

Here, Plaintiffs ask the Court to construe the statutes to impose unattainable requirements on employers, and at the same time, to ignore the very regulations that make the statutes workable.  That cannot be Congress's intent or this Court's duty.

### B.  Plaintiffs Must Allege That Defendants Knew Or Should Have Known Plaintiffs' "Actual Expenses."

This is not a run of the mill minimum wage claim.  Plaintiffs do not allege that Defendants failed to pay the minimum wage in the first instance.  Rather, Plaintiffs claim that the wages they received were diminished by under-reimbursed expenses.  In these circumstances, the employer's knowledge is necessarily an essential element of the claim.  Plaintiffs assert that neither the FLSA nor the MFLSA require employees to notify the employer of its failure *to pay minimum wage*.  (Pls.' Br. at 3.)  This shallow argument dodges the point, ignoring that Plaintiffs' claim is based on reimbursements for *expenses*

exclusively within their knowledge and control, not simply wages.  It also ignores that in analogous circumstances, employees are required to prove the employer knew they worked unreimbursed overtime.   At base, Plaintiffs contend that the Acts require employers to mystically divine an employee's "actual expenses" irrespective of the nature of those expenses or Plaintiffs' own actions.  Plaintiffs never suggest how that is even remotely possible.

### 1.    *Secretary of Labor v. Labbe* **is inapposite.**

Plaintiffs argue that the Court of Appeals for the Eleventh Circuit has "directly consider[ed] this issue on a motion to dismiss and confirmed that Plaintiffs asserting a minimum wage claim need not allege knowledge."  (Pls.' Br. at 4 (citing *Secretary of Labor v. Labbe*, 319 Fed. App'x 761 (11th Cir. 2008).)  To the contrary, the *Labbe* court did not consider *any* of the key issues now before this Court.

In *Labbe*, the Secretary of Labor brought suit against Labbe (an employer) and others, alleging generally that the defendants failed to pay minimum wages and overtime, and also failed to keep accurate records.  *See Labbe*, 319 Fed. App'x at 762.  Labbe moved to dismiss, or in the alternative, for a more definitive statement.  *See id*.  The district court granted Labbe's motion to dismiss without prejudice.  *See id*.

Importantly, the case did not involve expense reimbursements and Labbe's motion was not based on the fact that the amounts of employee expenses were not known to him. Instead, he moved to dismiss because the complaint failed to set forth the relevant time period for each claimant's claim or to state whether each claim was for overtime or minimum wages.  (Decl. of William A. McNab ("McNab Decl.") Ex. 1 (Labbe's Mem.

Law Supp. Mot. Dismiss) ¶ 2.)  Citing the U.S. Supreme Court's then-recent decision in

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the district court ruled that more

detail was needed.  (McNab Decl. Ex. 2 (October 1, 2007 Order of U.S. District Court

Judge Daniel Hurley granting motion to dismiss) at 1-2.)   Neither expense

reimbursements nor the employer's knowledge were considered at all.

In an unreported decision, the Court of Appeals reversed, holding only that, unlike

the antitrust conspiracy at issue in *Twombly*, there was "no need to prove *intent* or

*causation* that might require additional pleading."[4]   *Labbe*, 319 Fed. App'x at 763

(emphasis added).  Thus, the court did not consider whether employers must somehow

deduce and pay "actual expenses" (that are necessarily based on approximations) without

notice from the employees who incurred them.  The decision provides no guidance in the

circumstances before this Court.

> **2.    The overtime cases present the best analog in these circumstances.**

Numerous courts, including the Court of Appeals for the Eighth Circuit, have

determined that an employer's knowledge of an employee's uncompensated services is

an essential element of the claim.  *See Hertz v. Woodbury Co., Iowa*, 566 F.3d 775, 781

(8th Cir. 2009).[5]  The same reasoning applies to unreimbursed expenses that were not

made known to the employer and Plaintiffs fail to explain why the overtime cases are not

---

[4]   It is doubtful that these threadbare allegations would survive after the Supreme Court's post-*Twombly* ruling in *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

[5]   Numerous other cases holding that the employer's knowledge is an essential element are cited in Defendants' initial brief.

the best analog.  Plaintiffs argue that requiring employees to notify employers of their expenses or that reimbursements somehow fell short would result in an impermissible waiver under the Acts (Pls.' Br. at 5-6), but fail to explain why requiring the employer's knowledge of uncompensated overtime services has never been held to result in an improper waiver.

Instead, Plaintiffs argue that the FLSA's definition of "employ" (which means to "suffer or permit to work") applies to the overtime provisions of section 207 but not the minimum wage provisions of section 206.  (Pls.' Br. at 6-7.)  To the contrary, definitions in section 203 of the FLSA expressly apply to the entire Act.  *See* 29 U.S.C. § 203 (entitled "Definitions" and stating, "As used in this chapter—").  Plaintiffs then assert, "[i]f the cases Defendants cite were truly parallel, they would have been decided on the basis that the employees in those cases did not prove that the employer knew it was not paying time and a half for overtime, not that the employer didn't know the people were working."  (Pls.' Br. at 7.)  But that is a distinction without a difference.  If an employer does not know an employee is working more than forty hours, it cannot properly record, calculate, or pay his or her overtime.  Likewise, if an employer does not know what an employee's "actual expenses" are, or that they exceeded the reimbursements paid, it cannot reconcile and reimburse the difference.[6]

---

[6]   Plaintiffs complain that Defendants have not cited cases holding that an employer's knowledge is an essential element of a minimum wage claim.  (Pls.' Br. at 8.)  Of course, this is not a traditional minimum wage claim, it is an expense reimbursement claim, and for that reason, the overtime cases present the best guidance.  And Plaintiffs have not cited a single case holding that an employer must clairvoyantly pull an employee's "actual expenses" out of thin air.

### 3.     Plaintiffs fail to plead an essential element of their claim.

Relying on an unreported district court decision that predated *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937 (2009), Plaintiffs claim that they need not plead knowledge even though it is an essential element.  (Pls.' Br. at 8) citing *Barvinchak v. Ind. Reg'l Med. Ctr.*, 2007 WL 2903911 (W.D. Pa. Sept. 28, 2007).  But the *Barvinchak* court hedged on the existence of a knowledge requirement, finding that the plaintiff's record-keeping claims sufficiently alleged the employer's knowledge.  *See id.* at *8. Thus, *Barvinchak* does not dispense with the knowledge requirement as definitively as Plaintiffs suggest.  Notably, there are no similar record-keeping allegations here (indeed, record-keeping claims were dropped from the SAC).  Because Plaintiffs fail to allege that Defendants knew or should have known of any under-reimbursed expenses, their claims fail to satisfy *Iqbal's* plausibility requirement.  129 S. Ct. at 1949.

### 4.     Employees should not receive a windfall based on information they did not share with their employer.

In their initial brief, Defendants pointed out that the FLSA is "not a sword on which to impale an unsuspecting employer who is engaged in a business and honestly exercises a reasonable effort in good faith to comply with all the required provisions of the act."  *Wirtz v. Harrigill*, 214 F. Supp. 813, 815 (S.D. Miss. 1963).  While Plaintiffs, who seek liquidated (double) damages, failed to respond to this argument in their opposition brief, the point is too important to ignore.

Plaintiffs do not allege that Defendants failed to provide regular paychecks reflecting all the hours they worked.  They acknowledge that Defendants regularly

provided reimbursements for expenses Plaintiffs incurred delivering pizzas.  They do not allege that they ever provided receipts, claims, demands, or otherwise informed Defendants that they did not believe the reimbursements always covered their expenses. (Consent Forms ¶ 5.)  Nonetheless, they are pursuing a nationwide collective action and class action lawsuit, double damages, and attorneys' fees.  (SAC at 17.)  There is something wrong with that picture.  Because Plaintiffs do not allege that Defendants knew or should (or even could) have known that Plaintiffs' expenses ever exceeded the reimbursements they received, they fail to state a plausible claim under the Acts and those claims should be dismissed.

### C.    The Knowledge Requirement Is Implicit In The Regulations.

As noted above, federal and state regulations permit reimbursement of a "reasonable approximation" of the expense, or an "agreed upon amount."  29 C.F.R. §§ 217(b)(3) and (c); Minn. R. 5200.0090, subp. 1.  In either case, the reimbursing party's knowledge of the expense is implicit in the very notion of a reimbursement.

Plaintiffs claim that the Minnesota rule "defines the travel expenses to be reimbursed as 'whichever is greater' between actual expenses and an agreed upon amount."  (Pls.' Br. at 10.)  But what the rule in fact says is, "***receipted*** out-of-pocket expenses . . . or an agreed upon allowance, whichever is greater."  Minn. R. 5200.0090, subp. 1 (emphasis added).  The rule does not address "actual" expenses at all, and Plaintiffs do not allege that they have ever submitted "*receipted* out-of pocket expenses."

Likewise, Plaintiffs assert that the "reasonably approximate" reimbursement permitted under the federal regulations applies only to the calculation of overtime rates,

and because 29 C.F.R. § 531.35 (the "free and clear" wages regulation) does not use the "reasonably approximate" language, it has no application to minimum wage. (Pls.' Br. at 11-12.)   This is plainly wrong.   Specifically addressing expense reimbursements, section 531.35 expressly incorporates section 531.32(c), which in turn says, "[f]or a discussion of reimbursements such as . . . 'travel expenses,' etc., see § 778.217 of this chapter."   Thus, the "reasonably approximate" reimbursement standard is integral to the entire FLSA regulatory structure and it is not at all inconsistent with section 531.35.

## III.   COUNT THREE ALSO LACKS A STATUTORY BASIS

In Count Three, Plaintiffs allege a violation of Minnesota Statutes section 177.24, subdivisions 4 and 5.   Subdivision 4 limits deductions (unreimbursed expenses) for uniforms and equipment to $50.[7]   It also prohibits deductions for uniforms, equipment, consumables, and travel that would reduce wages below the minimum.   *See id.*   Finally, subdivision 5 requires employers to reimburse amounts deducted for the items listed in subdivision 4 upon termination.

To the extent Plaintiffs assert that alleged under-reimbursements reduced their wages to below the minimum wage, the claim merely rehashes Count Two and fails for the same reasons.   With respect to subdivision 5's requirement that employers reimburse certain expenses upon termination, Plaintiffs simply ignore that "travel expenses" are expressly defined as *receipted* expenses or an agreed upon allowance.   Minn.

---

[7]   It appears that Plaintiffs have abandoned their claim based unreimbursed expenses of more than $50 for uniforms and equipment, because they fail to respond to Defendants' argument that the claim, such as it is, derives from "travel expenses," not from uniform or equipment expenses, which are subject to the $50 limit.

R. 5200.0090, subp. 1.   Plaintiffs do not allege that they have any unpaid receipted expenses, and they admit that Defendants paid them an allowance (regular reimbursement) for travel expenses.   (Consent Forms ¶ 4.)   While Plaintiffs now claim that the allowance was not agreed upon, their admitted conduct proves otherwise.

## IV.   PLAINTIFFS FAIL TO ALLEGE SUFFICIENT FACTS TO STATE A PLAUSIBLE CLAIM FOR RELIEF

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 553-54).   In performing this inquiry, the court must take into account the essential elements of the underlying claim.   *Iqbal*, 129 S. Ct. at 1947.   An FLSA claim must provide enough information that basic arithmetic would disclose the substance of the claim.   *See Zhong v. August August Corp.*, 498 F. Supp. 2d 625, 628 (S.D.N.Y. 2007).   Dismissal is appropriate where, as here, the allegations in the complaint do not permit an inference of a right to relief that rises above the speculative level.   *See Jones v. Casey's Gen. Stores*, 538 F. Supp. 2d 1094, 1102-03 (S.D. Iowa 2008).

Here, Plaintiffs' barebones SAC fails to allege: what their wage rates were; the dates of alleged violations (or whether they were continuous or intermittent); the amounts of alleged deficiencies from "actual expenses"; the amounts of alleged deficiencies from minimum wage; the nature of the "actual expenses" incurred; the proportion of personal use of the vehicle versus use for the employer; and various other necessary facts.

Instead of providing a proper factual basis, Plaintiffs argue that *Zhong* is inapposite because it did not deal with expenses.[8]  (Pls.' Br. at 15.)  However, the very dearth of reimbursement cases demonstrates the implausibility of Plaintiffs' theory and highlights why their pleadings fall short.  Plaintiffs' wage claim is attenuated—it does not derive from an alleged failure to pay the wage in the first instance, but from an alleged subsequent under-reimbursement of "actual expenses" (that in fact can only be approximated).  That is why more fulsome pleadings are necessary to raise the inference of a right to relief to something more than mere speculation.  *See Iqbal*, 129 S. Ct. at 1949; *Jones*, 538 F. Supp. 2d at 1102-03.  Plaintiffs' assertion that they "do not believe" the reimbursements always covered their expenses (Consent Forms ¶ 5), without more, is wholly speculative.  Under the controlling authorities, it is not enough.

## V.  PLAINTIFFS' MINNESOTA GRATUITIES CLAIM INTERPRETS MINNESOTA LAW IN A MANNER THAT WOULD INTERFERE WITH THE FEDERAL REGULATORY SCHEME

Plaintiffs' final claim is that Defendants withheld gratuities in violation of Minnesota law.  (SAC ¶¶ 22-23, 42, 79-90.)  Plaintiffs' claim, as asserted, would create an impermissible conflict between state and federal law.  As Plaintiffs admit, Defendants impose a *mandatory* delivery charge for each pizza delivered.  (SAC ¶ 22.)  Under longstanding federal regulations, mandatory charges of this kind are not gratuities; rather, they are considered the employer's exclusive property.  29 C.F.R. §§ 531.52 and 531.55(a).  On the other hand, under Minnesota law, a mandatory charge may, in limited

---

[8]  Notwithstanding that Plaintiffs themselves rely extensively on non-expense reimbursements cases.

circumstances (which do not apply here), be deemed a gratuity belonging to the employee.  Minn. Stat. §§ 177.23, subd. 9 and 177.24, subd. 3.  Plaintiffs' interpretation of Minnesota law creates a conflict with the method by which federal regulators have chosen to oversee this important area.  When that occurs, state law is preempted.  *See Mensing v Wyeth, Inc.*, 562 F. Supp. 2d 1056, 1058-59 (D. Minn. 2008); *and see Forest Park II v. Hadley*, 336 F.3d 724, 733 (8th Cir. 2003) (holding that state statutes that frustrate federal methods of enforcement are preempted).

Rather than addressing the conflict, Plaintiffs respond with *non sequiturs*, red herrings, and straw man arguments, which are addressed below.[9]  But the gravamen of Defendants argument—which Plaintiffs simply avoid—is this:  The federal government has established a regulatory structure to guide employers' handling of mandatory charges.  Under that structure, mandatory charges belong to the employer.  They ***are not*** tips.  However, as revenue, they ***may*** be used to pay the employee's base wage.  If so, they ***must*** be counted toward the calculation of base pay and overtime rate but must **not** be counted toward the tip minimum.  At the very same time (according to Plaintiffs), those same mandatory charges ***are*** tips under Minnesota law, they ***must*** be given to the employee, but ***must not*** be used toward the employee's base pay or be counted toward the calculation of the employee's overtime rate.

---

[9]   Plaintiffs cite several cases that stand for the unremarkable proposition that express and field preemption do not apply to the FLSA.  (Pls.' Br. at 18 n.6.)  Because Defendants contend that conflict preemption applies here, these cases are inapposite.

The U.S. Department of Labor ("DOL") has explained why its approach to mandatory charges is important to the regulatory framework. First, if an employee is to qualify as a tipped employee, it must be through *bona fide* tips—not mandatory charges subsequently paid over to the employee. *See* FLSA Op. Letter No. 2005-31 (Sept. 2, 2005), 2005 WL 3308602.[10] Conversely, when mandatory charges are paid over to the employee, they must constitute part of the employee's regular wage and the baseline for determining the overtime rate. *See* FLSA Op. Letter (Aug. 29, 1997), 1997 WL 971257.[11] Finally, in some cases, mandatory services charges paid over to an employee may constitute a commission, while a tip cannot count as a commission. *See id.*

Instead of addressing this clear conflict, Plaintiffs present the following series of misguided arguments:

- *There is no conflict—employers can simply pay more.* (Pls.' Br. at 23.) *"By providing an expansive definition of gratuities which includes obligatory charges (here delivery fees) as 'gratuities,' and by also excluding those gratuities from calculations of the minimum wage, Minnesota's law results in the establishment of a 'minimum wage higher than the minimum wage established under' the FLSA."* (Pls.' Br. at 19.)

Under section 218 of the FLSA, a state's establishment of a higher minimum wage is not preempted by federal law. 29 U.S.C. § 218(a). But that *is not* the effect of

---

[10]   A copy was provided with Defendants' initial brief.

[11]   A copy was provided with Defendants' initial brief.

Plaintiffs' interpretation of Minnesota law and this argument is a complete *non sequitur*. Under Minnesota law, "[n]o employer may directly or indirectly credit, apply, or utilize gratuities *towards payment of the minimum wage* set by this section or by federal law." Minn. Stat. § 177.24, subd. 2 (emphasis added).  Plaintiffs suggestion that Minnesota's gratuities statutes somehow create a higher minimum wage is flatly contradicted by the statutes themselves.  More importantly, it does not address the conflict at issue here.

- *Under federal law, employers are permitted to retain tip credit employees' tips, but they cannot do so under some states' laws.*  (Pls.' Br. at 21 n.10.)

This red herring misses the boat because it erroneously assumes its own predicate—that mandatory service charges are tips, when under federal law, they clearly are not.  29 C.F.R. §§ 531.52 and 531.55(a).

- *Under 29 C.F.R. § 531.55 the employer may use revenue from mandatory charges to satisfy the wage obligation, but cannot "use such amounts to satisfy the requirements that pertain to the amount of tips the employees must receive in addition to those amounts."*  (Pls.' Br. at 21.)

This simply means that mandatory charges are revenue that may be used to pay employees' wages.  Because mandatory charges are revenue, not tips, they cannot be counted toward the minimum amount of tips required to participate in the tip credit program.

- *If the DOL has determined that mandatory charges belong to employers, while tips belong to employees, one would expect that federal courts would provide employees*

*redress when employers withhold their tips, though they often do not.*   (Pls.' Br. at 21 n.10.)

This is wrong in two respects.  First, the DOL has not determined that tips always belong to employees.   Under the regulations, tips may be pooled, or in certain circumstances, retained by the employer.   29 C.F.R. § 531.55.   Second, the two cases Plaintiffs cite merely hold that the FLSA's minimum wage provisions do not provide a cause of action for retained tips because tips are not *wages* under section 206.  *See Platek v. Duquesne Club*, 961 F. Supp. 835, 838 (W.D. Pa. 1995); *Chan v. Triple 8 Palace, Inc.*, 2006 WL 851749, at *4 (S.D.N.Y. Mar. 30, 2006).

• *Defendants' theory creates a conflict in the entire practice of allowing "tip credits," which permit employers to pay less than the statutory minimum wage to employees who regularly receive a certain minimum level of tips.*  (Pls.' Br. at 22.)

This is just another red herring.  In establishing its own minimum wage, each state may decide whether or not to allow employees to utilize a tip credit (as the federal Act does, see 29 C.F.R. §§ 531.50-59), and if so, what percentage of the minimum wage may be derived from tips.  There is no inherent conflict in that.  The conflict arises when the same dollars are simultaneously tips and not tips, wages and not wages, and part of the base wage and overtime wage calculation and not part of the base wage and overtime wage calculation.

Plaintiffs' arguments are merely a smokescreen meant to distract the Court and camouflage Plaintiffs' failure to address the real issue—conflict preemption. Importantly, even if it is conceivably *possible* to comply with both the state and federal

regulations, that is not the standard.  If the state law "interferes with the methods" by which the federal laws are effectuated, it is preempted.  *Forest Park II*, 336 F.3d at 733.

## CONCLUSION

For each of these reasons, Defendants respectfully request that Plaintiffs' Second Amended Complaint be dismissed with prejudice.

Dated: September 23, 2009                    WINTHROP & WEINSTINE, P.A.


                                             s/  William A. McNab
                                                 Laura A. Pfeiffer, #0260125
                                                 William A. McNab, #320924
                                                 Joseph M. Windler, #387758

                                             225 South Sixth Street, Suite 3500
                                             Minneapolis, Minnesota 55402-4629
                                             Tel:  (612) 604-6400
                                             Fax:  (612) 604-6800

                                             **ATTORNEYS FOR DEFENDANTS**

4746913v3

- 18 -